## Commonwealth v. Bonaduce

*Richelle D. Sanders, deputy attorney general,* for the Commonwealth.

*Debra J. Moreland,* for defendant.

BLOOM, *J.,* April 25, 1986—Presently before the court is the novel issue of whether the Commonwealth may suspend a driver's operating privileges for refusing a urine test, after the operator has clearly taken a breath test. For reasons more fully explained later in this opinion, we hold that it may not.

The facts of this matter are not in dispute and can best be summarized as follows:

1. On September 26, 1985, defendant was stopped by Officer Donald Harris of the Upper Chichester Police Department.

2. Officer Harris noticed an odor of an alcoholic beverage about defendant.

3. Defendant admitted that he had been drinking.

4. Defendant was arrested and taken to the Pennsylvania State Police Barracks where two breath tests were taken.

5. The results of the breath test showed a blood-alcohol reading of .128 percent and .129 percent.

6. The officer, feeling that defendant's condition should have shown a higher reading, requested defendant to submit to a urine test.

7. Defendant refused the urine test.

8. The officer submitted his affidavit for refusal and the Commonwealth subsequently notified defendant that his operating privileges were being suspended for 12 months.

9. This appeal followed.

The very narrow issue to be decided by this case is where the operator has taken a chemical test which clearly indicates his blood-alcohol content exceeding .10 percent, may the police request subsequent testing?

Our research has uncovered no appellate decision that is squarely on point. We are not unmindful of Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety v Emory, 91 Pa. Commw. 580, 498 A.2d 26 (1985), and Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety v Bartle,     Pa. Commw.     , 500 A.2d 525 (1985). However, we feel that this case is distinguishable from the above.

Here defendant took two tests of his breath. These tests conclusively showed that his blood-alcohol content exceeded the limit set forth in 75 Pa.C.S. §3731. Unlike Emory, supra, this test was taken for use by the police. The police knew that they had all the evidence necessary to convict defendant. Also unlike Bartle, supra, the breathalyzer did not malfunction. The police had no legitimate reason to request additional testing. The purpose of the testing is to determine the blood-alcohol content of the operator's blood. Once it exceeds the maximum percentage allowable by law, no further good can come from additional testing.

For all of the above reasons, we enter the following

## ORDER

And now, this April 25, 1986, after presentation of testimony and review of briefs submitted by respective counsel, it is hereby ordered and decreed that defendant's appeal is sustained.